IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jane Doe | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | JURY TRIAL DEMANDED |
| Independence Blue Cross | : | |
| Defendant. | : | |

**THE PARTIES**

1. Plaintiff Jane Doe is a resident of Philadelphia PA and a health insurance customer of Independence Blue Cross ("IBX"), the defendant. Ms. Doe is appearing under a pseudonym and a motion for anonymity has been filed concurrently herewith.

2. Defendant IBX is a health insurance company, is Ms. Doe's health insurer and is headquartered at 1901 Market St, Philadelphia, PA 19103.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the parties and claims pled herein pursuant to 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction over related state law claims pled herein pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

**PERTINENT FEDERAL STATUTES AND REGULATIONS**

6. Congress prohibited sex discrimination in health care at 42 U.S.C. § 18116 (a/k/a "Sec. 1557") by referring to the prohibitions of Title IX (20 U.S.C. § 1681) against sex discrimination:

Nondiscrimination (a) In general

Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), *title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.),* the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, *title IX,* section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

(*emphasis added*)

7. Sex discrimination means:

    20 U.S. Code § 1681 - Sex

    (a) Prohibition against discrimination; exceptions. No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination.

8. IBX was required to certify compliance with the prohibitions against sex discrimination in 42 U.S.C. § 18116 in order to participate in the Commonwealth of Pennsylvania's State health Insurance Exchange, under 45 C.F.R. § 92.4:

    Assurances.
    (a) Assurances. An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part. A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part. An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

9. IBX, as a public accommodation, is prohibited from discriminating against those with

disabilities under Title III of the Americans with Disabilities Act, *42 U.S.C. § 12182(A)*:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

## BACKGROUND

10. Ms. Doe is transgender ("trans").

11. Trans is likely due to brain neuroanatomy and the formation of that brain neuroanatomy in the womb.

12. As noted by Dr. Robert Sapolsky, professor of neuroscience at Stanford University and one of the leading scholars of trans science: "[I]t's not the case that transgender individuals think they're a different gender than they actually are. It's more like they got stuck with bodies of a different sex from who they actually are." Sapolsky, R.M., Behave, 216 n. (Penguin 2017.)

### Ms. Doe Has GD

13. Trans people are often treated as outcasts, and are mocked, harassed, abused, and hurt by others which causes distress in trans people and leads to Gender Dysphoria ("GD").

14. GD is a medical and therapeutic diagnosis "associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning" for the trans person. *Diagnostic and Statistical Manual of Mental Disorders*, 5th Ed. ("DSM-V" at 302.85).

15. Trans people are diagnosed as suffering from GD when they have "clinically significant distress" associated with being trans.

16. GD is a disability in that it substantially impairs one or more major life activities, including, but not limited to, neurological, brain, social, and occupational functions.

17. Ms. Doe is a trans person who has been diagnosed with GD.

18. Ms. Doe belongs to the disadvantaged class of trans people with GD.

19. Ms. Doe is a person with a disability within the definitions of the ADA and the Rehabilitation Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

20. Defendant is aware that trans people with GD, including Ms. Doe, may be a person with a disability as a result of their GD.

**Defendant Has Discriminated Against Ms. Doe**

21. Defendant has discriminated against Ms. Doe on the basis of Ms. Doe's gender and on the basis of Ms. Doe's disability by, *inter alia*, denying health insurance coverage to Ms. Doe for certain facial procedures (generally "Facial Feminization Surgery" or "FFS).

22. The Denial lacks medical support, is undercut by IBX's references, is arbitrary, capricious and discriminatory, and violates IBX policy, state and federal law.

**Background**

23. Ms. Doe is a transgender ("trans") woman.  Trans women identify as women.  Being a trans woman is difficult because they were born with the bad luck to be stuck with bodies that are a different gender from who they actually are:

> Remarkably, studies have examined brains of transgender individuals, concentrating on brain regions that, on the average, differ in size between men and women. And consistently, regardless of the desired direction of the sex change and, in fact, regardless of whether the person had undergone a sex change yet, the dimorphic brain regions in transgender individuals resembled the sex of the person they had always felt themselves to be, not their "actual" sex. In other words, it's not the case that transgender individuals think they're a different gender than they actually are. It's more like they got stuck with the bodies of a different sex from who they actually are.
>
> Sapolsky, R.M., *Behave*, 216 n. (Penguin 2017).

24. Trans people are often subject to stress because of who they are.  The stress of being trans may lead to a number of medical conditions including a condition known as Gender

Dysphoria ("GD") which is a disability; it substantially impairs one or more major life activities, including, but not limited to, neurological, brain, social, and occupational functions.

25. Various medical procedures are available to assist trans women to ensure a body that is more in congruence with their gender identity. These procedures may, as well, alleviate gender dysphoria.

26. Ms. Doe has been diagnosed with gender dysphoria.

27. Ms. Doe applied to IBX coverage for FFS and was turned down.

28. IBX rejected coverage for the requested procedures, calling them cosmetic and not medically necessary ("the Denial").

29. There is no medical support -- no medical references -- cited in the Denial or its attached Policy ("Treatment of Gender Dysphoria", No. 11.09.02h)) that address FFS for a trans person suffering from gender dysphoria ("GD").

30. It is impossible for IBX to legally maintain the Denial as it is clear the surgery is medical necessary and not cosmetic. For example, an authoritative reference, ignored by IBX, notes that FFS is not cosmetic:

> [D]emarcation between 'necessity' and 'cosmetic' in transgender healthcare based on specific body parts *is in direct opposition* to the scientific community's understanding of gender dysphoria and professional guidelines for transgender health.
>
> \*          \*          \*
>
> *While cosmetic surgery is intended to produce beauty, FFS is undertaken to produce femaleness.* Like GRS, FFS is intended to transform the patient's gender from male to female. FFS is not driven by a desire to achieve cosmetic improvement; it is driven by a desire to obtain a body that enables one to engage and function in society.
>
> There are many examples of when evidence regarding the impact of a given procedure on quality of life has led to changes in insurance coverage and reclassification of a procedure from 'cosmetic' to 'necessary.' Breast augmentation is considered a cosmetic procedure and not covered by insurance but reconstructive breast surgery for cancer patients that have undergone mastectomies is considered medically necessary and therefore a covered

service. Similarly, we no longer consider facial surgery for victims of extensive burns to be 'cosmetic'. So too should FFS no longer be considered 'cosmetic' but medically necessary.

*Facial Feminization Surgery: The Ethics of Gatekeeping in Transgender Health,* Am J Bioeth. 2018 Dec; 18(12): 3–9. (emphasis added.)

31. IBX's own Policy for Cosmetic Procedures (No. 12.01.03) references medical research that support FFS coverage here, and so contradicts the Denial. IBX's Policy for Cosmetic Procedures (No. 12.01.03) references make clear that reconstructive or plastic surgery - both medically necessary - are different than cosmetic surgery and are exactly in accord with the FFS references cited above.

32. FFS is meant to correct body defects and dysfunctional areas of the body.

33. It is by definition reconstructive surgery and a medical necessity for trans women such as Ms. Doe.

34. The lack of any medical support for the IBX decision and the failure to act in accordance with its own medical research mean the Denial is wrong and should be withdrawn.

35. Each of the procedures denied here have been denied solely because they are for treatment of Ms. Doe, a trans woman. They are available to non-trans people. The Denial is arbitrary, capricious and discriminatory.

36. The First Appeal of the Denial - an internal requirement of IBX before filing suit - was decided September 23, 2020 (the "First Appeal Decision") and upheld the denial of coverage. The First Appeal Decision was itself discriminatory.

37. The only paragraph of the First Appeal Decision that discusses the merits and insists Ms. Doe must produce photographs "to demonstrate a facial appearance outside the broad range of normal for the female gender." First Appeal Decision at p. 4.

38. The First Appeal Decision was discriminatory because there is no other procedure, on

information and belief, that requires provision of such materials and fails to defines what "the broad range of normal" is.

39. However the new, nonsensical IBX objection is further evidence of IBX's arbitrary, capricious discrimination as it is believed such a requirement is not needed in other similar types of surgeries for non-trans people and no other insurance company has such a requirement.

40. The next procedural levels - Second and Third Appeal procedures - were no better.

41. The Denial has been maintained.

42. FFS is meant to correct body defects and dysfunctional areas of the body.

43. It is by definition reconstructive surgery and a medical necessity for trans women such as Ms. Doe.

44. There is no credible support for the IBX Denial.

## COUNTS

### COUNT I - SEX DISCRIMINATION UNDER 42 U.S.C. § 18116

45. Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

46. Ms. Doe has been wrongfully been subjected to discrimination by IBX because of her sex.

47. IBX acted with deliberate indifference to Ms. Doe's rights.

48. As a direct result of IBX aforesaid unlawful discriminatory practices Ms. Doe has sustained harm.

49. Ms. Doe seeks redress for that harm from IBX as appropriate under 42 U.S.C. § 18116.

### COUNT II – VIOLATION OF TITLE III OF THE ADA

50. Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

51. Ms. Doe has a disability – GD – within the meaning of the ADA.

52. IBX is a public accommodation within the meaning of the ADA.

53. The IBX Denial violates the ADA by discriminating on the basis of their disability in its denial of coverage for treatment meant to alleviate Ms. Doe's disability.

54. IBX acted with deliberate indifference to Ms. Doe's rights under the ADA.

55. As a direct result of IBX aforesaid unlawful discriminatory practices Ms. Doe has sustained harm.

56. Ms. Doe seeks redress for IBX violation of her rights under 42 U.S.C. §12133.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Doe respectfully requests that this Court:

A. Award Ms. Doe compensatory and punitive damages, attorneys' fees, costs, and disbursements.

B. Award Ms. Doe such other and further relief as the Court may deem just and proper.

A trial by jury is demanded on all counts.

Respectfully Submitted,

Date: 6-16-22

/s/ Julie Chovanes
Julie Chovanes, Esq.
Chovanes Law
P.O. Box 4307
Philadelphia, PA 19118
267-235-4570
jchovanes@chovanes.com

Counsel for Plaintiff